IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:21-CR-3127 |
| vs. | AMENDED TENTATIVE FINDINGS |
| CRAIG A. HOFFMAN, | |
| Defendant. | |

The Court has received the presentence investigation report and addendum in this case. The defendant has objected to the presentence report (filing 48) and has moved for departure or variance (filing 47).

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c) impose upon the United States the burden of proof on all Guidelines enhancements;

    (d)    impose upon the defendant the burden of proof on all Guidelines mitigators;

    (e)    depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

    (f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.    The defendant has objected to the presentence report. Filing 48. Specifically, the defendant objects to including amounts based on his alleged violation of 26 U.S.C. § 7201 for purposes of loss calculation and restitution.[1] In the defendant's plea agreement, filing 38, he agreed to pay restitution for certain tax losses and to have those amounts included as relevant conduct for purposes of loss calculation only if the Court determined that this undisputed conduct was a willful act of tax evasion,

---

[1] The Guidelines make clear how to compute tax loss. "If the offense involved willful failure to pay tax, the tax loss is the amount of tax that the taxpayer owed and did not pay." U.S.S.G. § 2T1.1(c)(3). To determine the total tax loss attributable to the offense, "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." *Id.*, cmt. n.2. The defendant pled guilty to violating 26 U.S.C. § 7202, "willful failure to collect or pay over tax." Per the Guidelines, then, the tax loss computation should include all conduct which violated the tax laws, unless such conduct is clearly unrelated. And the government must prove restitution is warranted by a preponderance of the evidence, by showing the actual, provable loss. 18 U.S.C. § 3664(e); *U.S. v. Martinez,* 690 F.3d 1083, 1088-89 (8th Cir. 2012).

as opposed to a lawful act of tax avoidance. PSR at ¶ 25; filing 38 at 3. The facts in the PSR are not contested, and the sole issue is whether the defendant's undisputed actions were a violation of § 7201, willful evasion of a tax.

The defendant was a personal injury attorney with his own law firm, organized as an LLO of which he was the sole employee. PSR at ¶ 33. He failed to pay payroll taxes, and the IRS filed several liens against the defendant's LLO from 2013 to 2017. PSR at ¶ 37.

In early 2014, the IRS began levying funds from the defendant's business operating account to satisfy unpaid payroll tax, and, in response, the defendant changed the way he was paid by his business. From October to December 2013, the defendant was paid by the LLO with a total of five checks, but over the course of 2014, when the IRS was levying funds, the LLO began to write checks to the defendant much more frequently, seemingly over two checks per week. PSR at ¶ 39.

As it turned out, what was happening was that the defendant would go to the bank and transfer funds from his client trust account, which could not be levied by the IRS, to his business account which was subject to the levy. Without leaving the teller's window, he would then write a check from the business account and deposit the funds to his personal account. Because the funds earned by the law firm were in the business account for only moments before being paid out to the defendant, this had the effect of reducing the funds available in the leviable business account so that the IRS could not collect what it was owed. This practice, repeated hundreds of times in 2014 and 2015, is the alleged tax evasion.

A person has illegally evaded a tax if three elements are met: the existence of a tax deficiency, willfulness, and an affirmative act to evade the tax. *U.S. v. Brooks*, 174 F.3d 950, 956 (8th Cir. 1999). Any single affirmative act, legal or illegal, which furthers a taxpayer's will to evade a tax is enough to satisfy the third element. *See id.* (quoting *Spies v. U.S.*, 317 U.S. 492, 499 (1943)); *U.S. v. Boisseau*, 841 F.3d 1122, 1125 (10th Cir. 2016) (citing *U.S. v. Jungles*, 903 F.2d 468, 474 (7th Cir. 1990)).

But the IRS recognizes a difference between lawfully avoiding a tax and illegally evading a tax. IRM 25.1.1.3.3 (Jan. 23, 2014). Taxpayers can legally avoid taxes by reducing their tax liability, such as by taking advantage of deductions or by becoming a bona fide resident of a place with more favorable tax laws. *See, e.g., Vento v. Director of Virgin Islands Bureau of Internal Revenue*, 715 F.3d 455, 471-72 (3d Cir. 2013). But a person cannot take steps to willfully evade or defeat the collection of a tax. Most examples of tax evasion involve some sort of misrepresentation or concealment of assets, but "a willful and positive attempt to evade tax *in any manner* or to defeat it *by any means*" satisfies the affirmative act element. *Spies*, 317 U.S. at 499 (emphasis added).

In *Boisseau*, for instance, a defendant who altered his method of compensation committed an affirmative act in furtherance of avoiding a tax. 841 F.3d at 1126. In that case, a lawyer directed his law firm to pay his personal expenses directly rather than pay him a salary, in order to avoid an IRS levy on his personal account. *Id.* at 1124-25. The Tenth Circuit upheld a bench trial finding that this satisfied the affirmative act element because the defendant changed his compensation method so that he could purposefully avoid the levy. *Id.* at 1126-27. That's

4

analogous to this case, where the defendant paid his salary multiple times per week rather than following his previous salary schedule in order to avoid an IRS levy on his business's account.

It is virtually uncontested that the defendant intended to deplete the business operating account to thwart the IRS levies. Filing 48 at 5 ("There is a fair inference that the Defendant's intent was to cash the check before the IRS or any other creditor could levy on this account"); PSR at ¶ 39. In any case, the Court can infer, based on timing, that the defendant purposefully altered his compensation schedule to prevent the IRS from collecting what it was owed. This inference is further supported by the defendant's sophistication and knowledge of the tax code. *See* PSR at ¶ 33.

The defendant likens his conduct to any other employee cashing his paycheck before a creditor could take the funds. Filing 48 at 5. According to the defendant, cashing a paycheck is not misleading or evasive behavior, and intending to keep a low bank account to avoid creditors is something a "reasonable person" would do. Filing 48 at 5. The defendant argues this is lawful avoidance, not unlawful evasion.

But the defendant is not even close to being in the position of an average employee who receives a paycheck. The defendant wrote his own paychecks on his own schedule, and he altered his usual conduct in order to prevent the IRS from collecting what it was owed. Further, *any* act, illegal or legal, reasonable or unreasonable, which furthers an intention to evade paying a tax, is sufficient as an affirmative act. *Spies*, 317 U.S. at 499; *Boisseau*, 841 F.3d at 1126. The defendant was not trying to legally avoid tax liability; in fact, the defendant had already incurred the

5

liability. Instead, he was attempting to evade paying the tax he knew he already owed by altering his compensation schedule.

Thus, the Court finds that the defendant's altering of his compensation schedule constitutes an affirmative act which furthered the defendant's will to evade paying taxes. Based on the uncontested facts in the PSR, the defendant violated § 7201—so, the resulting losses are part of the loss calculation for Sentencing Guidelines purposes, and he must pay restitution for this conduct.

The defendant has also moved for a downward departure or variance based on the unusual facts related to the offense. Filing 47; PSR at 24. It appears to the Court that the circumstances the defendant relies on are best considered in the context of a potential variance.[2] The defendant also requests a guideline range within Zone B with a sentence of probation and house arrest. Filing 47. The Court will resolve these issues at sentencing.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3)

---

[2] The term "departure" is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines. As opposed to a "departure," a "variance" refers to a non-Guidelines sentence based on the factors enumerated in § 3553(a). *United States v. Lozoya*, 623 F.3d 624, 625-26 (8th Cir. 2010).

6

business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 8th day of March, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge